UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| Michael Lauer, Board of Trustees Chairman, and William Nix, Board of Trustees Secretary, on behalf of the INDIANA STATE COUNCIL OF CARPENTERS PENSION FUND; *et al.*, | ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No.: 2:12-cv-291 ) |
| FORTUNE MANAGEMENT, INC. and SCOTT A. PITCHER, | ) ) ) |
| Defendants. | ) ) |

**OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment Against Defendant Fortune Management, Inc., Only [DE 25] filed by the plaintiffs, Michael Lauer, Board of Trustees Chairman, and William Nix, Board of Trustees Secretary, on behalf of the Indiana State Council of Carpenters Pension Fund, *et al.*, on November 24, 2014, and the Motion for Summary Judgment [DE 27] filed by the defendant, Fortune Management, Inc., on November 24, 2014. For the following reasons, the Motion for Summary Judgment Against Defendant Fortune Management, Inc., Only [DE 25] filed by the plaintiffs is **GRANTED**, and the Motion for Summary Judgment [DE 27] filed by Fortune is **DENIED**.

*Background*

The plaintiffs, Indiana State Council of Carpenters Pension Fund, Indiana/Kentucky/Ohio Defined Contribution Pension Trust Fund, Indiana/Kentucky/Ohio Regional Council of Carpenters Welfare Fund, Indiana Carpenters Apprenticeship Fund and Journeyman Upgrade Program, and United Brotherhood of Carpenters Apprenticeship Training Fund of North

America (collectively funds), were multiemployer employee benefits funds that received contributions from employers pursuant to collective bargaining agreements. The parties have agreed that the funds were created subject to the Employee Retirement Income Security Act. The plaintiff, Indiana/Kentucky/Ohio Regional Council of Carpenters (IKORCC), was a labor organization that operated in the State of Indiana. The parties have agreed that IKORCC qualified as a Union subject to the Labor-Management Relations Act.

The defendant, Fortune Management, Inc., was a construction company that operated throughout the State of Indiana. On February 23, 2001, Scott Pitcher, President of Fortune, executed a Memorandum of Agreement between Fortune and IKORCC in Howard County, Indiana. On June 23, 2003, David Schneider, Fortune's Construction Manager, executed a Memorandum of Agreement between Fortune and IKORCC in Lawrenceburg, Indiana. Through the MOAs, Fortune agreed to be bound by the funds' current and future CBAs.

Specifically, each MOA stated that Fortune "agree[d] to be bound by all of the terms and conditions thereof for the duration of such Collective Bargaining Agreements and any future Agreements and for the period of any subsequent extensions including any amendments which may be subsequently made." The MOAs also included language to terminate the adopted CBA and required the desiring party to "notify the other in writing at least sixty (60) days and not more than ninety (90) days prior to the expiration of the commercial Collective Bargaining Agreement . . . ." The funds have had CBAs in effect from the time Fortune signed the MOAs through the present year. Every CBA expired on May 31st, which would require notification for termination between March 2nd and April 1st in the expiring year.

The CBAs set Fortune's pay rate, contribution, and deduction amounts based on a set pay scale for each specialized position. Additionally, they required Fortune to make contributions

and deductions to the funds based on the amount of work performed and covered by the CBAs. The parties have agreed that Fortune was required to make payments for work performed by IKORCC members.

After signing the MOAs, Randy Sutton, an IKORCC Field Representative, would visit Fortune job sites to identify any violations of the MOAs or the CBA. In 2001, after discussions with Sutton, Pitcher had the impression that Fortune was not subject to the MOA or CBA if it did not employ IKORCC members. In 2004, Fortune completed a project with IKORCC members. In its Summary Judgment Brief [DE 28], Fortune claimed that it did not employ any IKORCC members or make any contributions or payments to the funds after completing that project in 2004. It also claimed that Sutton continued to visit Fortune job sites from 2004 through 2012, that Pitcher informed Sutton that Fortune intended to remain non-union, and that the funds and IKORCC did not enforce the terms of the MOAs or CBA from 2004 through 2012. Additionally, Fortune alleged that neither the funds nor IKORCC audited Fortune from 2004 through 2012.

The funds and IKORCC disputed many of Fortune's above allegations. First, they indicated that Fortune made payments through January 2009 rather than 2004. Additionally, they noted that Fortune submitted its monthly reporting forms through June 2012, although the reports from February 2009 through June 2012 stated that Fortune had no union employees. Their payroll auditor found that Fortune employed carpenters in 2009 from March through December, in 2010 in January and March through December, in 2011 from February through December, and in 2012 from January through June.

The funds and IKORCC also submitted an affidavit from Sutton that disputes Pitcher's affidavit about their conversations. Sutton stated that he did not have authority to modify a CBA

and did not modify any CBAs with Fortune, Pitcher, or another signatory contractor. He also denied telling Pitcher that Fortune was not obligated to make contributions when it did not employ IKORCC members. Rather, he informed Pitcher that Fortune needed to make contributions for all employees performing bargaining unit work, but not for employees who did not perform bargaining unit work. Additionally, Sutton indicated that he complained to Fortune whenever he learned that it did not pay the contractually required wages and fringe benefits.

Arlene David, a payroll auditor at Stewart C. Miller &Co., stated that her company audited Fortune's books and records on March 10, 2006. She indicated that her contact person at Fortune was Karen Browder. Sutton also recalled that Pitcher complained about an audit in 2005 or 2006. In its Reply Brief, Fortune admitted that it incorrectly asserted that it stopped paying contributions after 2004. It attributed that mistake to difficulties gathering information after losing documents during its 2006 relocation and an unrecoverable computer system failure.

In 2012, the funds' payroll auditor calculated Fortune's delinquent contributions and deductions, interest and audit fees, and 10% liquidated damages at $285,804.87. Specifically, they determined that Fortune owed:

> (a) $12,099.04 in contributions, interest, audit fees and costs; $53.15 in deductions and interest; and liquidated damages for the period of January 1, 2009 through June 30, 2012 for the IKORCC Central Zone 1;
> (b) $21,642.47 in contributions, interest, audit fees and costs; $1,200.92 in deductions and interest; and liquidated damages for the period of January 1, 2009 through June 30, 2012 for the IKORCC Central Zone 3;
> (c) $235,710.31 in contributions, interest, audit fees and costs; $11,784.12 in deductions and interest; and liquidated damages for the period of January 1, 2009 through June 30, 2012 for the IKORCC Northeast Zone 2; and
> (d) $3,239.20 in contributions, interest, audit fees and costs; $75.66 in deductions and interest; and liquidated damages for the period of January 1, 2009 through June 30, 2012 for the IKORCC Northwest Zone 1B.

Fortune did not dispute the auditor's mathematical calculations but argued that it had no obligation to pay the calculated amount. Additionally, the funds listed the total liquidated damages as $24,467.44 or $951.32 for Central Zone 1, $2,029.64 for Central Zone 3, $21,204.14 for Northeast Zone 2, and $282.34 for Northwest Zone 1B. The funds indicated that the amount owed was based on Fortune's failure to pay fringe benefit contributions and deductions from January 1, 2009 through June 30, 2012. As discussed above, Fortune did not dispute the calculated amount but argued that it was not liable for contributions and deductions during that time period.

*Discussion*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014); *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). A fact is material if it is outcome determinative under applicable law. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed. 2d 142, 155 (1970); *Stephens*, 569 F.3d at 786. If the non-movant bears the ultimate burden of persuasion on an issue at trial, the requirements are not as onerous for the moving party. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Under this circumstance, the moving party can either come forward with affirmative evidence negating an element of the

5

opponent's claim or by asserting that the nonmoving party has insufficient evidence to succeed on its claim. *Modrowski*, 712 F.3d at 1169.

Summary judgment may be entered against the non-moving party if it "is unable to 'establish the existence of an essential element to [the party's] case, and on which [that party] will bear the burden of proof at trial . . . .'" *Kidwell*, 679 F.3d at 964 (quoting ***Benuzzi v. Bd. of Educ.***, 647 F.3d 652, 662 (7th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." ***Blythe Holdings, Inc. v. DeAgnelis***, 750 F.3d 653, 656 (7th Cir. 2014) (quoting ***Anderson v. Liberty Lobby***, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The non-moving party must show specific facts that create a genuine issue for trial. ***Blythe***, 750 F.3d at 656.

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial. ***Anderson***, 477 U.S. at 248; ***Cung Hnin v. Toa, LLC***, 751 F.3d 499, 504 (7th Cir. 2014); ***Stephens***, 569 F.3d at 786; ***Wheeler v. Lawson***, 539 F.3d 629, 634 (7th Cir. 2008).

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. . . . [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

***Anderson***, 477 U.S. at 250; *see* ***Reeves v. Sanderson Plumbing Prods., Inc.***, 530 U.S. 133, 149–51, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105, 120–22 (2000) (setting out the standard for a

6

directed verdict); *Celotex*, 477 U.S. at 322–23; *Stephens*, 569 F.3d at 786; *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008) (stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Blythe*, 750 F.3d at 656 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

The funds and IKORCC have indicated that they no longer are pursuing Counts III and IV of the Complaint against Pitcher. Additionally, they did not develop arguments to support Counts III and IV in response to Fortune's Motion for Summary Judgment. Therefore, the funds' and IKORCC's claims against Pitcher are waived. *See* **Ienco v. Angarone**, 429 F.3d 680, 684–85 (7th Cir. 2005) (finding that a party abandoned claims when he failed to develop them in his responsive pleadings to a summary judgment motion) (citing ***Duncan v. Wis. Dep't of Health & Family Servs.***, 166 F.3d 930, 934 (7th Cir. 1999) (indicating that a party must develop any arguments it wants the court to consider or they will be deemed abandoned)).

The funds and IKORCC have alleged that Fortune failed to pay contributions and deductions from January 1, 2009 through June 30, 2012 pursuant to a CBA. They have brought this action under ERISA and the LMRA. Pursuant to Section 515 of ERISA,

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

**29 U.S.C. § 1145**. A fiduciary may bring a civil action to obtain appropriate equitable relief to redress a violation under ERISA or the terms of a plan. **29 U.S.C. § 1132(a)(3)**. A multiemployer plan is a fiduciary under section 1132(e). *Line Const. Benefit Fund v. Allied Elec. Contractors, Inc.*, 591 F.3d 576, 579 (7th Cir. 2010) (citing *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 744–745 (7th Cir. 2007)).

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions
> (C) an amount equal to the greater of--
>   i. interest on the unpaid contributions, or
>   ii. liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant,
> (E) such other legal or equitable relief as the court deems appropriate
>
> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

**29 U.S.C. § 1132(g)(2)**. Under Section 301 of the LMRA, a labor organization may sue an employer to enforce monetary obligations pursuant to the parties' CBA. *DeLange v. Banks Design, Inc.*, 2010 WL 405981, at *5 (N.D. Ind. Jan. 27, 2010) (citing *Jim McNeff, Inc. v. Todd*, 461 U.S. 260, 269, 103 S. Ct. 1753, 75 L. Ed. 2d 830 (1983)); *see* **29 U.S.C. § 185**.

Fortune has not challenged that the funds could bring this action pursuant to 29 U.S.C. § 1132 or that the funds would be entitled to the above relief. It also has not challenged that IKORCC qualified as a labor organization and could bring suit pursuant to 29 U.S.C. § 185.

Additionally, it did not dispute that it was initially required to make contributions under the terms of a CBA pursuant to 29 U.S.C. § 1145. Rather, Fortune has argued that it was not obligated to pay contributions from January 1, 2009 through June 30, 2012 because the CBA had lapsed or because the funds waited too long to initiate this suit under the doctrine of laches.

Generally, an entity that has signed a CBA "is bound to its terms for the duration of the agreement unless the employees covered by that agreement reject the signatory union in a Board conducted election." ***J.W. Peters, Inc. v. Bridge, Structural & Reinforcing Iron Workers, Local Union 1, AFL-CIO***, 398 F.3d 967, 973 (7th Cir. 2005) (citing ***NLRB v. Bufco Corp.***, 899 F.2d 608, 610 (7th Cir. 1990)). However, there is a recognized exception to the above rule, the "one-man unit" exception.

> It is settled that if an employer employs one or fewer unit employees on a permanent basis that the employer, without violating Section 8(a)(5) of the Act, may withdraw recognition from a union, repudiate its contract with the union, or unilaterally change employees' terms and conditions of employment without affording a union an opportunity to bargain.

***J.W. Peters***, 398 F.3d at 973 (quoting ***Stack Electric, Inc.***, 290 N.L.R.B. 575, 577 (1988)). Fortune has argued that it employed fewer than two unit employees during the years in question and thus, qualified for the "one-man unit" exception. Furthermore, it has argued that it effectively repudiated the CBA by failing to pay contributions and deductions, not employing union workers, and indicating a desire to stay non-union. Fortune has admitted that it never reduced its desire to terminate the CBA to writing, as required by the MOA, but it has argued that its actions were sufficient to repudiate the CBA. Therefore, Fortune has claimed that it was not liable for delinquent contributions and deductions because the CBA no longer was in effect.

However, the Seventh Circuit has rejected the "one-man unit" rule as a defense to ERISA liability. *See* ***Central States, Southeast & Southwest Areas Pension Fund v. Schilli Corp.***, 420

F.3d 663, 671 (7th Cir. 2005) (citing **Martin v. Garman Const. Co.**, 945 F.2d 1000, 1004 (7th Cir. 1991) ("The district court properly refused to permit the one-man rule to impair the contract's validity under 29 U.S.C. § 1145.")). "The one-man rule may remain valid for purposes of unfair labor practice proceedings while counting for naught when the contract is cognizable under ERISA." *Martin*, 945 F.2d at 1005; *see* **J.W. Peters**, 398 F.3d at 977 (quoting *Martin*); **NECA-IBEW Pension Trust Fund v. Bays Elec., Inc.**, 2011 WL 4435575, at *8 (C.D. Ill. Sept. 23, 2011) (quoting *Martin*). Moreover, "nothing in ERISA makes the obligation to contribute depend on the existence of a valid collective bargaining agreement . . . ." **Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.**, 870 F.2d 1148, 1153 (7th Cir. 1989); *see* **Moriarty v. Svec**, 164 F.3d 323, 335 (7th Cir. 1998) (quoting *Gerber*). Therefore, Fortune cannot rely on the "one-man unit" exception to preclude liability under ERISA for delinquent contributions and deductions.

Fortune also has argued that the funds' and IKORCC's claims were barred by the doctrine of laches. The Seventh Circuit has concluded that ERISA does not bar a defense based on the doctrine of laches. **Teamsters & Employers Welfare Trust of Ill. v. Gorman Bros. Ready Mix**, 283 F.3d 877, 883 (7th Cir. 2002). Additionally, laches can be used to shorten a statute of limitations. *Gorman*, 283 F.3d at 881 (citing **Hutchinson v. Spanierman**, 190 F.3d 815, 823 (7th Cir. 1999); **Maksym v. Loesch**, 937 F.2d 1237, 1248 (7th Cir. 1991); **Martin v. Consultants & Administrators, Inc.**, 966 F.2d 1078, 1100–01 (7th Cir. 1992) (concurring opinion)). Although there is no federal statute of limitations for actions seeking delinquent employer contributions under ERISA, the Seventh Circuit has chosen to apply the statute of limitations of a similar state action. **Young v. Verizon's Bell Atlantic Cash Balance Plan**, 615 F.3d 808, 816 (7th Cir. 2010) (citing **Leister v. Dovetail, Inc.**, 546 F.3d 875, 880–81 (7th Cir. 2008); **Berger v.**

10

*AXA Network LLC*, 459 F.3d 804, 808 (7th Cir. 2006); *Daill v. Sheet Metal Workers' Local 73 Pension Fund*, 100 F.3d 62, 65 (7th Cir. 1996)). Previously, this court determined that Indiana's six year statute of limitations for contract disputes was the applicable statute of limitations. *Colvin v. United Flooring, Inc.*, 2014 WL 172126, at *2 (N.D. Ind. Jan. 15, 2014).

The funds and IKORCC filed this action on July 25, 2012 seeking delinquent contributions from January 2009 through June 2012. Therefore, they have argued that they filed this action within the statute of limitations and that laches was not a valid defense because they timely filed this action. Fortune did not dispute that the action was filed within the statute of limitations but has argued that laches still should bar this action because of an unreasonable delay. When a court applies a state statute of limitations, it also applies that state's precedent for the doctrine of laches unless it is inconsistent with federal law or policy. *Gorman*, 283 F.3d at 885–86 (Easterbrook, J., concurring) (citing *Hardin v. Straub*, 490 U.S. 536, 539, 109 S. Ct. 1998, 2000, 104 L. Ed. 2d 582 (1989); *Shropshear v. Corp. Counsel of City of Chi.*, 275 F.3d 593, 596 (7th Cir. 2001)). Because this court has borrowed a statute of limitations from Indiana, it must look to Indiana law regarding the doctrine of laches.

Under Indiana law, laches "is comprised of three elements: inexcusable delay in asserting a right, an implied waiver arising from knowing acquiescence in existing conditions, and a change in circumstances causing prejudice to the adverse party." *Wyatt v. Wheeler*, 936 N.E.2d 232, 237 (Ind. Ct. App. 2010) (citing *In re Bender*, 844 N.E.2d 170, 184 (Ind. Ct. App. 2006), *trans. denied*. Additionally, mere inconvenience does not establish prejudice. *Ind. Real Estate Comm'n v. Ackman*, 766 N.E.2d 1269, 1274 (Ind. Ct. App. 2002). Rather, a party must demonstrate that it detrimentally altered its position based on the assumption that the delaying party would not pursue a claim against it. *Ackman*, 766 N.E.2d at 1274.

11

First, Fortune has claimed that it stopped making contributions in 2004, that its contributions never were audited, and that the funds and IKORCC never indicated it owed delinquent contributions after it stopped making payments in 2004. It has argued that it was prejudiced by the eight year delay from when it stopped payments in 2004 and the filing of this claim in 2012. Therefore, Fortune has argued that the doctrine of laches should bar this action. The funds and IKORCC did not address the laches argument in their response brief. However, they indicated that Fortune relied on incorrect facts to support its laches argument.

Specifically, the funds and IKORCC claimed that Fortune made payments through January 2009 rather than 2004. Additionally, they indicated that they audited Fortune's payments in 2006. Furthermore, they showed that Fortune submitted monthly reporting forms from January 2009 through June 2012 that stated that Fortune did not have any employees performing bargained work. In reply, Fortune conceded that the above facts were true but stated that its misstatements of the facts were the result of an unrecoverable computer failure that left it without many past documents. Furthermore, Fortune argued that, although not as strong of an argument, it still demonstrated the necessary elements for laches.

First, Fortune has argued that the funds and IKORCC waited an unreasonable amount of time to bring the current action. Specifically, Fortune noted that they waited six years from 2006 to 2012 to conduct an audit of Fortune's contributions. However, Fortune has not presented any authority that the funds should have conducted an audit sooner than 2012. Moreover, any audit before January 2009 would not have included Fortune's delinquent contributions. Fortune also has claimed that the funds waited an unreasonable amount of time because they knew that it had not made any contributions starting in 2009 through June 2012. Although the funds knew that Fortune did not make payments, Fortune has not indicated that the funds knew that Fortune was

delinquent on contributions. Rather, the funds conducted the audit in 2012 to determine whether Fortune had delinquent contributions. Furthermore, Fortune submitted monthly reports that indicated it did not have any bargaining unit employees from 2009 through June 2012. Therefore, had the funds assumed that Fortune's monthly reports were accurate, it would not have been on notice of delinquent contributions because Fortune would not have owed any contributions. Last, Fortune has conceded that the funds brought this action within the applicable statute of limitations. Although the funds did not bring this suit immediately after the first missed payment, they brought this suit within the six year statute of limitations and within three and a half years of the first missed contribution. Therefore, the court does not find that the funds and IKORCC waited an unreasonable amount of time to bring this action.

Even if the court assumed that the funds had waited an unreasonable amount of time to bring this action, Fortune has not demonstrated prejudice. Fortune has argued that the cost of defending against this action has caused undue prejudice. However, defending against an action does not demonstrate how Fortune detrimentally altered its position on the assumption that the funds would not bring this suit. Fortune also has argued that the delay made it believe that it did not owe any contributions. Fortune appears to make the argument that it would have taken steps to avoid this action had it known that it owed contributions. However, the only steps that Fortune could have taken to avoid being sued for the disputed contributions would have been to make the contributions. *See **Kroger***, 2004 WL 2452737, at *12 (finding that Kroger could not show prejudice because the only steps it could have taken if it knew the funds' position would have been to pay the disputed contributions); ***Brown-Graves Co. v. Central States, Southeast & Southwest Areas Pension Fund***, 206 F.3d 680, 684 (6th Cir. 2000) (finding that the laches defense failed because the only steps the employer could have taken to avoid suit for delinquent

13

contributions would have been to make the contributions). Last, Fortune has argued that it lost documents over the years that would allow it adequately to defend against the funds claims. However, Fortune has conceded the material facts presented by the funds and only has argued two defenses against this action. Because Fortune has not shown how it detrimentally altered its position based on any unreasonable delay, it has not demonstrated prejudice sufficient to establish laches. Therefore, the laches defense fails.

As discussed above, Fortune did not dispute the calculated delinquent contributions or that it had employees performing bargained work during the years in question. Rather, it only argued that it was not liable for the delinquent contributions pursuant to the one-man unit rule and the doctrine of laches. This court has found that neither the one-man unit rule nor laches bars the funds' action. Therefore, because Fortune's defenses have failed, the court **DENIES** Fortune's Motion for Summary Judgment. Additionally, because Fortune has not challenged the funds' audit or the alleged amount owed, the court **GRANTS** the funds' and IKORCC's Motion for Summary Judgment.

For the foregoing reasons, the Motion for Summary Judgment Against Defendant Fortune Management, Inc., Only [DE 25] filed by the plaintiffs is **GRANTED**, and the Motion for Summary Judgment [DE 27] filed by Fortune is **DENIED**. The court enters judgment against Fortune as follows: (1) principal in the amount of $104,008.47 payable to the IN/KY/OH Regional Council of Carpenters Welfare Fund; (2) principal in the amount of $115,206.33 payable to the Indiana State Council of Carpenters Pension Fund; (3) principal in the amount of $13,538.18 payable to the IN/KY/OH Regional Council of Carpenters Defined Contribution Pension Trust Fund; (4) interest on the contributions payable to the funds in the amount of $35,215.96 (total for all funds); the funds are given 14 days to file an itemization of interest

accruing from November 24, 2014 to the date of this judgment, which is to be added to the interest award; (5) liquidated damages on the contributions payable to the funds in the amount $23,275.29 (total for all funds); (6) audit fees and costs in the amount of $4,722.08 payable to the funds (total for all funds); (7) contributions in the amount of $11,921.70 payable to IKORCC; (8) interest on the contributions payable to IKORCC in the amount of $1,192.17; IKORCC is given 14 days to file an itemization of interest accruing from November 24, 2014 to the date of this judgment, which is to be added to the interest award; (9) liquidated damages on the contributions payable to IKORCC in the amount of $1,192.17; (10) post-judgment interest to accrue at the prime rate in accordance with the CBAs; and (11) attorney's fees and costs—the funds and IKORCC are instructed to request attorney's fees and costs pursuant to Local Rule 54-1.

    ENTERED this 14th day of May, 2015.

                                              /s/ Andrew P. Rodovich
                                              United States Magistrate Judge